IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| WALLACE CARSON, | |
| Petitioner, | |
| v. | Case No. 18-CV-01424–NJR |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion to vacate, set aside, or correct sentence under 28 U.S.C § 2255 filed by Petitioner Wallace Carson ("Carson") (Doc. 3). In his petition, Carson claims he was unlawfully induced into entering a plea agreement, improperly charged by the prosecution, and incorrectly subjected to double jeopardy and denied effective assistance by counsel (*Id.*). For the reasons set forth below, the Court denies Carson's Section 2255 Petition.

### FACTUAL & PROCEDURAL BACKGROUND

On September 2, 2015, Carson robbed a Walgreens store in East St. Louis, Illinois (Doc. 29 of SDIL Case No. 15-CR-30149-NJR) (hereafter referred to as "criminal case"). Carson waited in line until the cashier opened the register and then pulled a loaded, semiautomatic pistol out of his pants, which he held in his right hand while reaching across the counter and grabbing cash from the register (*Id.*). Carson fled by bicycle, but witnesses told police his direction of travel, and he was quickly caught (*Id.*). That night,

Carson agreed to provide a voluntary statement to FBI agents, in which he admitted to robbing the Walgreens in East St. Louis (*Id.*). Later that month, a grand jury for the Southern District of Illinois returned an Indictment charging Carson with the Hobbs Act robbery, 18 U.S.C. § 1951(a); brandishing a firearm in furtherance of a crime of violence, *id.* § 924(c); and unlawful possession of a firearm by a previously convicted felon, *id.* § 922(g)(1).

On February 3, 2016, Carson entered a plea agreement and pled guilty to all three of the above listed counts (Docs. 28, 30 of the criminal case). According to the Change of Plea transcript, before accepting Carson's guilty plea, the Court questioned Carson, his lawyer, Mr. Cronin, and the prosecution regarding Carson's competence to plead guilty at the time of the hearing (Doc. 60, p. 4-11 of the criminal case). In addition, the Court also confirmed with Carson his understanding of the rights he was waiving by choosing to plead guilty, including: the right to a jury of his peers, the right to the presumption of innocence accompanying a trial, the right to counsel during the trial, the right to object to evidence offered during the trial, the right to call his own witnesses, the right to remain silent during trial, and the privilege against self-incrimination (*Id.* at p. 7-10). To all questions, Carson affirmatively communicated his understanding of his waiver of those rights (*Id.*). The Court further probed Carson's understanding of the consequences of a guilty verdict, including the possible number of years to which Carson could be sentenced (*Id.* at p. 13). At that time, the Court also confirmed that Carson understood he was being charged as an armed career criminal (*Id.*). Carson again confirmed his understanding that if the sentence was greater than he expected, he would still be bound

by his plea agreement (*Id.* at p. 13, 17). When asked whether he had been threatened or forced to plead guilty, Carson answered, "[n]o" (*Id.* at p. 15).

Through the plea agreement, Carson knowingly and voluntarily waived the right to contest any aspect of the sentence and conviction except the substantive reasonableness of the terms of imprisonment (Doc. 30, p. 8 of criminal case). During the change of plea hearing, the Court confirmed that Carson understood he was waiving his right to appeal through his plea agreement (Doc. 60, p. 16 of criminal case).

On June 1, 2016, Carson was sentenced to a total of 272 months in prison as outlined in the plea agreement (Docs. 42, 46 of criminal case). That sentence was at the low end of the advisory guideline range calculated by the United States Probation Office (Doc. 38, ¶ 95). Afterwards, Carson filed a direct appeal, which was dismissed based on the appellate waiver in his agreement. *United States v. Carson*, 855 F.3d 828, 831 (7th Cir. 2017). Carson then filed a petition for writ of certiorari in the Supreme Court of the United States, which was denied on October 2, 2017. *Carson v. United States*, 138 S. Ct. 268 (2017).

On July 23, 2018, Carson filed a motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1). The Court promptly ordered Carson to file an amended petition that included facts and legal authority necessary to support his claims for relief (Doc. 2). On November 11, 2018, Carson filed his amended Section 2255 petition (Doc. 3). The Government subsequently filed its response (Doc. 7).

COLLATERAL REVIEW UNDER 28 U.S.C. § 2255

Relief under 28 U.S.C. § 2255 is limited. Unlike a direct appeal, in which a defendant may complain of nearly any error, Section 2255 may be used only to correct

errors that litigate the sentencing court's jurisdiction or are otherwise of constitutional magnitude. The United States Court of Appeals for the Seventh Circuit has emphasized that relief under Section 2255 "is available only in extraordinary situations," requiring an error of constitutional or jurisdictional magnitude, or a fundamental defect that resulted in a complete miscarriage of justice. *Blake v. United States*, 723 F.3d 870, 878 (7th Cir. 2013). *Accord Harris v. United States*, 366 F.3d 593, 594 (7th Cir. 2004) (Section 2255 relief is appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect that inherently resulted in a complete miscarriage of justice); *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996) ("relief under 28 U.S.C. § 2255 is reserved for extraordinary situations"). Section 2255 cannot be used as a substitute for a direct appeal or to re-litigate issues decided on direct appeal. *Coleman v. United States*, 318 F.3d 754, 760 (7th Cir. 2003), *cert. denied*, 540 U.S. 926 (2003); *Sandoval v. United States*, 574 F.3d 847, 850 (7th Cir. 2009); *White v. United States*, 371 F.3d 900, 902 (7th Cir. 2004).

## ANALYSIS

### I. Timeliness

The Government maintains that the Section 2255 motion is untimely under the one-year statute of limitations in 28 U.S.C. § 2255(f)(1) (Doc. 7). Specifically, a federal prisoner has one year from the date on which his judgment became final to file a Section 2255 motion. *See Clay v. United States,* 537 U.S. 522, 524-525 (2003). A judgment is "final" for purposes of Section 2255(f)(1) when the Supreme Court affirms the federal appellate court, denies certiorari, or the time to file a writ of certiorari lapses. *See Id.* at 522.

Carson was sentenced on June 1, 2016 (Doc. 42 of criminal case) and an amended

judgment was entered by the Court on June 13, 2017 (Doc. 50 of criminal case). On June 27, 2016, Carson filed a *pro se* notice of appeal regarding his sentence (Doc. 51 of criminal case). The Seventh Circuit dismissed Carson's appeal, and Carson filed a petition for writ of certiorari in the Supreme Court of the United States. On October 2, 2017, his petition for writ of certiorari was denied. Thus, the judgment became final when the Supreme Court denied Carson's petition for a writ of certiorari on October 2, 2017. The statute of limitations for filing a Section 2255 expired a year later on October 2, 2018. This Section 2255 petition was filed on July 23, 2018, which is within the one-year limitations period. Thus, this Court finds Carson timely filed his Section 2255 petition.

## II.    Waiver

Before delving into the substance of Carson's Section 2255 petition, this Court must also determine whether it has jurisdiction to consider his arguments. The Government argues that the Court does not have jurisdiction, as Carson waived his right to bring a collateral attack pursuant to Section 2255 when he pled guilty to the underlying offense. Specifically, the Government asserts, Carson gave up his right to attack his sentence and conviction by entering into a plea agreement where he waived those rights.

"It is well-settled in [the Seventh Circuit], as well as in virtually every circuit that has considered the question, that defendants may waive their right to appeal as part of a written plea agreement, and [the Seventh Circuit] has consistently upheld valid appeal waivers and dismissed appeals taken in contravention." *United States v. Woolley*, 123 F.3d 627, 631 (7th Cir. 1997). "Plea agreements are governed by ordinary contract principles." *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995). A waiver of appeal contained in a

plea agreement is enforceable as long as the record clearly demonstrates that it was made knowingly and voluntarily. *United States v. Hicks,* 129 F.3d 376, 377 (7th Cir. 1997); *United States v. Agee,* 83 F.3d 882, 885 (7th Cir. 1996). The content and language of the plea agreement itself, as well as the colloquy where necessary, governs the determination as to the validity of the waiver. *Woolley,* 123 F.3d at 632.

Here, Carson waived his right to bring a collateral appeal pursuant to Section 2255. The plea agreement signed by Carson expressly states that "[Carson] knowingly and voluntarily waives the right to contest any aspect of the conviction and sentence, including the manner in which the sentence was determined or imposed, that could be contested under Title 18 or Title 28, or under any other provision of federal law" (Doc. 30, p. 8 of criminal case). Moreover, at Carson's change of plea hearing, this Court specifically referenced the plea agreement, stating: "I just want to make sure—it is mentioned a couple of times in the plea agreement—that you understand that by entering into this plea agreement . . . you will have waived or, in other words, given up your right to appeal or collaterally attack your conviction and all or part of your sentence" (Doc. 60, p. 16 of criminal case). Carson responded "[y]es"(*Id.* at p.17). The record is clear that by entering into the plea agreement, Carson knowingly and voluntarily waived his right to file a petition under Section 2255. The Government asks the Court to enforce this waiver.

In *Jones v. United States,* 167 F.3d 1142 (7th Cir. 1999), the Seventh Circuit addressed the issue of the enforcement of a plea or cooperation agreement that waived the defendant's right to file a petition under Section 2255. The Seventh Circuit noted in *Jones* that so long as such a waiver is made knowingly and voluntarily, it is enforceable unless

the defendant can establish a claim of ineffective assistance of counsel in connection with the negotiation of the agreement. *Id.* at 1145. In other words, "waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives *only with respect to those discrete claims which relate directly to the negotiation of the waiver*." *Id.* (emphasis added).

Accordingly, *Jones* requires this Court to explore the nature of Carson's claims to determine if any of his challenges relate directly to the negotiation of the waiver. In his petition, Carson asserts four main arguments regarding the ineffectiveness of his trial counsel: (1) his counsel was ineffective because he did not inform Carson that by entering into this plea agreement, Carson would not be eligible to bring an appeal or collateral attack under Section 2255; (2) his counsel was ineffective because he knew Carson had grounds to raise on appeal, but coerced Carson into entering a plea agreement, therefore not allowing Carson to appeal his sentence; (3) his counsel was ineffective because he led Carson to believe a plea agreement was Carson's only option, and did not inform Carson that he had the opportunity to appeal his sentence if he did not enter a plea agreement; (4) his counsel was ineffective when he falsely informed Carson that he could appeal his sentence based on a newly recognized and retroactively applicable Constitutional right (Doc. 3).

Overall, Carson seeks to have his guilty plea set aside, arguing that he did not enter the plea agreement knowingly and voluntarily because he was denied effective assistance of counsel in understanding the plea agreement and what rights would be taken from him. Thus, this Court must first consider each claim, for if Carson fails on all

arguments, the Court cannot consider the balance of his Section 2255 petition. *See Mason v. United States,* 211 F.3d 1065, 1069-1070 (7th Cir. 2000) (citing *Jones,* 167 F.3d at 1145 (if ineffective assistance of counsel claim has nothing to do with the issue of a deficient negotiation of the waiver, petitioner has waived his right to seek post-conviction relief)).

### III. Carson's Claim of Ineffective Assistance of Council Regarding His Plea Agreement

Claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States,* 538 U.S. 500, 504 (2003). Under the law of this Circuit, because counsel is presumed effective, Carson "bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995). To succeed, Carson must show that his counsel's performance fell below an objective standard of reasonableness *and* that his deficient performance so prejudiced his defense that he was deprived of a fair trial. *Id.* (citing *Strickland v. Washington,* 466 U.S. 668, 688-94 (1984)). Stated another way, under the *Strickland* test, the defendant must show that his counsel's actions were not supported by a reasonable strategy, and that the error was prejudicial. *Massaro,* 538 U.S. at 501.

The first prong of the *Strickland* test, classified as the "performance prong," calls for a defendant to direct the Court to specific acts or omissions forming the basis of his claim. *Trevino,* 60 F.3d at 338. The Court then must determine whether, in light of all the circumstances, those acts or omissions fell "outside the wide range of professionally competent assistance." *Id.* While making this assessment, the Court must be mindful of

the strong presumption that counsel's performance was reasonable. *Accord Fountain v. United States,* 211 F.3d 429, 434 (7th Cir. 2000). If the defendant satisfies the performance prong, he must then meet the "prejudice prong" of *Strickland.* This requires the defendant to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Emezuo v. United States,* 357 F.3d 703, 707-08 (7th Cir. 2004), *citing Strickland,* 466 U.S. 52 (1985).

With regard to Carson's first two ineffective assistance claims, his allegations go to his knowledge with respect to the plea agreement itself. Carson has not submitted any testimony or evidence in support of the ineffective assistance claims. Therefore, the Court will take Carson's very own statements, made under oath to this Court at his change of plea hearing, to determine whether he knowingly and voluntarily entered into a plea agreement.

At Carson's change of plea hearing, Carson specifically agreed that he "read [the plea agreement] and discussed[ed] it with Mr. Cronin before he signed it" (Doc. 60, p. 15 of criminal case). Further, the Court asked Carson directly as to the waiver of all his appellate and collateral rights (*Id.* at p. 16). Specifically, the Court said "I just want to make sure—it is mentioned a couple of times in the plea agreement—that you understand that by entering into this plea agreement, you will have waived or, in other words, given up your right to appeal or collaterally attack your conviction and all or part of your sentence"(*Id.*). Carson agreed that he understood (*Id.* at p.17). Again, during the plea hearing, the Court asked "now, under some circumstances, you or the government may have the right to appeal any sentence that I impose. However, as part of your plea

agreement, you have waived most of your appellate rights" (*Id.* at p. 22). And again, Carson confirmed he understood (*Id.*). Additionally, the Court inquired "has anyone attempted in any way to force you to plead guilty or otherwise threatened you," in which Carson responded no (*Id.* at 15). Carson confirmed his signature on the plea agreement, and stated that he had read the plea agreement and discussed it with Mr. Cronin (*Id.*).

A review of Carson's plea agreement also reveals a post-conviction waiver that is both express and unambiguous. Under Section IV, paragraph 3, of the plea agreement, Carson agreed to waive "all appellate issues that might have been available if Defendant had exercised the right to trial" (Doc. 30, p. 8 of criminal case). In addition, Carson agreed to "knowingly and voluntarily waive the right to contest any aspect of the conviction and sentence, that could be contested under Title 18 or Title 28" (*Id.*). This provision clearly indicates that Carson's right to bring a motion pursuant to Section 2255 is included within the waiver.

In light of the many inquiries the Court made to confirm Carson understood the plea agreement, this Court finds that nothing in the record indicates that Carson did not knowingly and voluntarily enter the plea agreement. The record indicates Carson was aware of the rights he would be giving up, and confirmed he had discussed this with Mr. Cronin prior to the plea hearing. In fact, Carson demonstrated an underlying understanding of his right to clarify issues concerning his plea agreement and willingness to do so when he asked the Court to clarify whether or not the probation office could file additional charges against him (Doc. 60, p. 19 of criminal case). Carson neither denies that he signed the written plea agreement containing the waiver of his right to pursue

collateral relief from his sentence nor does he claim that he was illiterate or otherwise unable to understand the terms of the agreement. *See Nelson v. United States,* 22 F.Supp.2d 860, 867 (C.D. Ill. 1998). Therefore, the first and second claims are insufficient to provide relief under Section 2255.

The Court next reviews Carson's third claim of ineffective assistance. Carson alleges Mr. Cronin guided him to believe the plea agreement was his only option. The Court finds that Mr. Cronin did his due diligence and discussed all options with Carson. In support of this conclusion, the Court looks to the plea hearing transcript. At the change of plea hearing, Mr. Cronin said that he reviewed all possible defenses with Carson (Doc. 60, p. 27 of criminal case). Specifically, Mr. Cronin referenced the duress and coercion defense and expressed knowledge of the high burden of proof needed to assert these affirmative defenses (*Id.*). It is clear that Mr. Cronin's actions do not fall outside the wide range of professionally competent assistance, and Carson does not express that he would not have pled guilty absent a plea agreement. Consequently, Carson is denied relief on this claim as well.

Finally, Carson's fourth claim of ineffective assistance of counsel also lacks merit. Carson makes the bare allegation that Mr. Cronin falsely informed him that he could appeal his sentence based on a newly recognized and retroactively applicable Constitutional right. According to the plea agreement, Carson waived the right to appeal "any subsequent change in the interpretation of the law by the United State Supreme Court or the United States Court of Appeals for the Seventh Circuit that is declared retroactive by those Courts and that renders [Carson] actually innocent of the charges

covered herein" (Doc. 30, p. 8 of criminal case). On appeal, Carson actually argued that under *Johnson v. United States,* 599 U.S. 133 (2010), none of his crimes were violent felonies. *Carson,* 855 F.3d at 829. The Seventh Circuit dismissed Carson's appeal based on the enforcement of his waiver. *Id.* at 831. But it does not appear that Mr. Cronin misinformed Carson of his right to appeal based on any available information. Therefore, Carson's fourth claim of ineffective assistance fails.

Accordingly, the Court finds that Carson has not established that his counsel's performance fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 688. Consequently, Carson's valid waiver of his right to collateral appeal is enforceable, and he is barred from asserting his remaining arguments in his Section 2255 petition. Accordingly, the Court **DENIES** Carson's Section 2255 petition (Doc. 3).

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Cases instructs the district court to "issue or deny a certificate of appealability when it enters a final order averse to the applicant." "[A] district court's dismissal of a motion on the ground that it is an unauthorized successive collateral attack constitutes a final order within the scope of 28 U.S.C. § 2253(c), and therefore a certificate of appealability is required." *See Sveum v. Smith*, 403 F.3d 447, 448 (7th Cir. 2005) (per curium). 28 U.S.C. § 2253(c)(2) provides that a certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, the petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would

find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming,* 676 F.3d 621, 625 (7th Cir. 2012), *quoting Tennard v. Dretke,* 542 U.S. 274, 281 (2004). *See also Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

For the reasons set forth above, the Court has determined that Carson has not stated any grounds for relief under Section 2255, and reasonable jurists would not find that conclusion debatable or wrong. Thus, Carson has not made a "substantial showing of the denial of a constitutional right," and a certificate of appealability will not be issued.

## NOTICE

If Carson wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Carson chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 60 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Carson files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Additionally, Carson will only be allowed to proceed on his appeal if he obtains a certificate of appealability. Here, the undersigned District Judge has already declined to issue a certificate of appealability. Thus, Carson must request a certificate of appealability

from the Court of Appeals pursuant to Federal Rule of Appellate Procedure 22 and 28 U.S.C. § 2253(c), in addition to filing his notice of appeal.

The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Carson cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Carson plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Carson wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 60-

day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 60 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819–20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Carson showing excusable neglect or good cause.

## CONCLUSION

For the reasons set forth above, Carson's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 3) is **DENIED.** This action is **DISMISSED with prejudice**. The Court **DENIES** a certificate of appealability.

**IT IS SO ORDERED.**

DATED: April 15, 2020

*[signature: Nancy J. Rosenstengel]*

_____
NANCY J. ROSENSTENGEL
**Chief U.S. District Judge**